Okay, we will now proceed to our 3rd argument of the day, 21-25 U.S. v. Nunez-Rosas. Council, I should alert you that we're having some trouble with the system involving Judge Kelly. So you'll hear Judge Murphy and me pretty well, and we can hear you well, but there may be some interruptions to make sure that Judge Kelly can hear what you're saying. And that you can hear what he's saying. Let's begin, Mr. Poisson. Yes, sir. Yes, your honor. You may proceed. Thank you, your honor. Good morning, your honors. Council, may it please the court. My name is Andre Poisson. I'm with the Federal Defender's Office in New Mexico, and we represent Mr. Nunez-Rosas in this matter. Your honors, we have filed an appeal asking the court to find that the sentence he received, the 21-month sentence he received, was substantively unreasonable, as well as the result of an abuse of discretion regarding whether or not to apply a variance in his matter. As you're aware, Mr. Nunez-Rosas was a 1326 case, a reentry conviction. He received a 10-level enhancement pursuant to the guidelines for a 20-year-old case, a 20-year-old conviction. But because of his release date from prison, the conviction just squeaked in under the 15-year limit for accounting for criminal history, which under 201.2 then required a 10-level enhancement. As was discussed in front of Judge Herrera, the district court judge, Mr. Nunez-Rosas chose not to sign a plea agreement, which the government at sentencing pointed out would have resulted in essentially a six-month decrease on both ends of his sentencing range. But as we explained to the court, he had chosen not to sign a plea agreement because his intention, we asked for a six-month sentence, which we calculated that based on being the top end of a zero to six-month sentence, assuming that hit the, well, arguing that the prior 2001 conviction, one, overstated his criminal history, and two, just was stale, was too old to count. The district court disagreed and applied the 10-level enhancement. We believe that the decision that was made was unreasonable, substantially unreasonable, because when looking at the 3553A factors to weigh, the record states that Judge Herrera stated that she said, I've considered the 3553A factors, I've considered the pre-sentence report, and I believe she also stated the amended sentencing memo, which was filed to correct an error that was in the original sentencing memo. And then she went further to say at the time of sentencing, I know this seems harsh. I know this seems like it shouldn't apply. The conviction is old, but it is a serious conviction, and that phrase serious conviction is used in many of the cases that both the government and we cited for the court regarding whether or not a variance was appropriate in those particular cases. But what was... Counsel? Yes, sir. Counsel, did you say that the conviction was 20 years old? Yes, sir. I might have misunderstood. Yes, sir, I apologize. The conviction was from the year 2001, or excuse me, 2002. I thought it was 14. The date of offense was 2001. I thought it was 14 years ago. And then in September of 2020, he was arrested again. Yes, his release from prison was in 2006. However, his conviction was from the year 2002, October of 2002. So he... or 2001. So he actually... the conviction was 20 years old and was at the time of our sentencing, and when we were discussing this matter with Judge Herrera, was about seven months away from no longer accounting for criminal history points, which would have then dropped it out of consideration of 2L1.2 for an enhancement. And so that was something that we had brought to Judge Herrera's attention, that my client's only criminal conviction, he has no other criminal matters, no other reentries, no other cases, was about to expire, and that was the basis for our request of a variance to zero to six months. Mr. Persaud, did you... you requested a 12-month sentence? Six-month sentence, Your Honor. Six months. Yes, sir. The reason... this is interesting because there was a long period of time between his original conviction, but six years, he kept out of trouble because he was in prison. And then he was in Mexico. Yes, sir. And we have no idea what was going on in Mexico. It's not like this is a clean slate. He might not... He might not... Grab Kingpin, who was corrupting... Felt like a sporting event there for a second. Okay, and Your Honor, I mean, obviously, if we then consider the pre-sentence report, which can take into consideration and acknowledge foreign convictions, that section, that is not present. Yeah, but we don't... I don't know that we can take judicial notice of the problems with the political power, maybe even the judicial power of drug cartels and drug dealers in Mexico. But it's not... It's clearly a difference, different situation from his having been in this country from 2006 on, when we would have a better indication that he kept his nose clean. Sorry. Yeah. You are... I understand your point, Your Honor. What we can say, though, is that, at least from an immigration standpoint and from Border Patrol and Customs, since 2006, he had not attempted to re-enter the United States. And therefore, there is no local, I'll say local, or U.S. criminal history, which I believe would obviously have been found and cited to by U.S. probation in his pre-sentence report. And I think that's what you bring me to, is some of the cases that we cited for the court to consider in this matter, we had noted Chavez Juarez, where that individual had a 41-month sentence. His case is extremely similar to ours, but he ultimately lost on his request for a variance. We also have Amezcua Vasquez, which is a Ninth Circuit case, understandably. So while not controlling, the Tenth Circuit has considered some of the statements in Amezcua as being appropriate, as being correct. But in his case, he had a 25-year-old sentence, and there was a vacation in his sentence. Then there's Carrillo Rodriguez. The issue here, though, is abusive discretion, by the way. Yes, sir. And the fact that somebody else may have decided it otherwise doesn't really help you very much, does it? Did those cases say it was abusive discretion? No, but those cases, I think, are interesting because while they found no abusive discretion, one of the salient points that they looked at was the number of reentries that some of those defendants had since their conviction. They looked at other criminal history that they had accumulated since their enhancement conviction, if you will. Whereas in our case, there is no immigration history. There are no other criminal history points because there are no other convictions. And so I think Mr. Núñez-Rosas actually stands separate from those gentlemen, from those cases, and does present for the court a consideration of when is a variance appropriate when weighing the 3553A factors versus a within-guideline sentence that is often written to be presumed reasonable. And in here, what we told Federera, which further distinguished Mr. Núñez from these other cases that we've cited to the court, again, we reiterated no criminal history that was not disputed, that he had come because his family actually lives in the United States. He told the court that. So she was aware of his familial relationships. Regarding the crime itself, nothing was egregious. There was no indications of violence, firearms, doing something for profit, which is also another consideration the courts have written about, the 10th Circuit has written about saying, you know, that was a disqualifier for a variance. The last, you know, regarding the need to deter criminal conduct, he hadn't had anything for 20 years. And then the need to protect the public, you know, he, because he's a citizen of Mexico, he is going to be, I believe, deported again, and therefore the public will be protected from future conduct. But when you compare his history, as far as not re-entering the United States, really that point is quite low, I think, in importance. But Mr. Nunez, I think, does show us a fact pattern of a variance. Now, perhaps not the full variance to six months as we requested, but perhaps the court may, did not mention whether or not she considered a partial variance. As, you know, what all she said was, this may not seem fair, but it is a serious conviction. Yes, you know, drug trafficking, because this was methamphetamine, I understand, is deemed a serious drug offense. But given its age, 20 years, and I mean, and quite honestly, the fact that as we sit here today, it no longer counts. So 201.2 does have that time limitation built in. And I think it would have been appropriate for the court to consider, as we still are seven months away, it's no longer going to count. And here we are. That case no longer counts. Only this current 1326 conviction will count for criminal history points and therefore an enhancement should he return. But based on his history, that won't be for 20 years, if at all. And so I think that the 21 month sentence was substantially unreasonable. I know there was, in the court, at the sentencing hearing, government argued, well, he could have had, he could have signed the plea agreement that was offered to the fast track plea agreement that's used in the district. However, that would have limited him to a 15 to 21 month sentencing range with no opportunity to request a lower sentence. And so he literally had to make a choice, sign the plea agreement and take, accept a 15 to 21 sentence, assuming the plea agreement was accepted by the court, or not sign the plea agreement and make the request that we wanted to make, which was for a six month sentence. And so he basically, the plea agreement, when the government says he don't give him a benefit, he chose not to sign, yes, he made a conscious decision, and the court was made aware of that. And I think she still, her honor could have considered a partial variance. Perhaps she might have said, well, based on the lack of closeness in time, based on how close we are to this no longer counting, I'm not going to give a full variance to six months, essentially a 15 month variance from the 21 months that he received. Perhaps one half would have been completely appropriate. But by giving the full 21 months, that means that case counted as much as, you know, a more recent in time case. So the full magnitude of the 10 level enhancement would be shared with someone who was convicted, say, three years ago. That enhancement would absolutely have applied. But here we are, you know, we're on the other end of that timescale to 20 years. And it's merely the fact that he was sent to prison is what kept that case alive for counting. Had he been sentenced to probation, it wouldn't count anymore. It would be a 20 year old sentence, clearly outside the 15 year limit for that sentence. So with those reasons, we made a decision on how to move forward. And I think the court did not correctly balance the 3553A factors versus what is a substantially reasonable sentence and what's necessary, reasonable but necessary for a sentence in this matter. I only have like 20 seconds I'd like to reserve just a little bit, please. Thank you. Thank you. I'm going to embarrass myself here. Is it Firehammer? It's Firehammer, Your Honor. Okay, that's what I was told and I didn't believe it. Okay. Do you have anything you want to say? Yes. Good morning, Your Honors. May it please the court, counsel. My name is Rachel Firehammer. I'm an AUSA on behalf of the United States in this matter. The court should affirm the defendant's 21 month sentence. It was at the low end of the guideline range for his illegal reentry conviction. The sentencing judge was absolutely within her discretion to deny the defendant's request for a variance based on the age of his underlying aggravated felony conviction. And as Mr. Poisson noted, although the conviction is quite old, it's undisputed that it qualified for a 10 level increase to the defendant's offense level and placed him in criminal history category 2. The sentencing judge properly exercised her discretion to impose a sentence at the bottom of the correctly calculated guideline range of 21 to 27 months. This 21 month sentence is presumed reasonable and the defendant has not overcome the presumption of reasonableness in this case. The district court correctly reasoned that the defendant's methamphetamine distribution conviction was very serious. In 2001, he was arrested after he and two others were caught selling approximately three quarters of a pound of methamphetamine to an undercover DEA agent. Law enforcement also found scales, packaging, and more methamphetamine in the defendant's car, indicating the defendant was likely distributing methamphetamine to others as well. The severity of this conviction is also evidenced by the sentence imposed by the Oregon District Court. As Mr. Poisson noted, in 2002, the defendant was sentenced to 70 months in prison and five years of supervised release. He served over four years in prison until he was released and then removed to Mexico in October 2006. And the defendant's term of supervision, although it was unsupervised, did not expire until 2011, which is less than 10 years before he committed the instant legal reentry offense. As noted in the government's brief, this court has upheld sentencing judges' decisions not to vary downward based on the age of drug offense convictions in other illegal reentry cases. And this court has upheld presumptively reasonable guideline range sentences in the cases of United States v. Vasquez-Alcarez and United States v. Chavez-Suarez, which was cited by Mr. Poisson as well. And the circumstances in this case are similar to those in Vasquez-Alcarez. There, the defendant was also convicted of illegal reentry, and he similarly requested a variance based on the age or the alleged staleness of his 15-year-old cocaine trafficking conviction. And in that case, he had served just 150 days in prison. This court upheld the sentencing judge's guideline sentence in Vasquez-Alcarez and decision not to vary based on the age of the drug conviction. This court also noted that Vasquez-Alcarez's case for a downward variance was weaker than the case put forth in Chavez-Suarez. And there, the court also upheld a guideline range sentence where the district court declined to discount the 11-year-old marijuana offense he had committed in the past that carried an 18-month sentence where that defendant had only served nine months in prison. And so in this case, while the age of the defendant's drug offense may be older than the drug convictions seen in Vasquez-Alcarez and Chavez-Suarez, it's still just as serious, if not more serious, because of the nature of the offense. The defendant was convicted of distributing methamphetamine, a very dangerous drug, and also he served a significantly more time in prison for his methamphetamine distribution offense compared to the defendant served for their drug offenses in Vasquez-Alcarez and Chavez-Suarez. So it's simply not enough for the defendant to show that his preferred six-month sentence is reasonable. And even if this court were to believe that a different sentence was appropriate, it's still not enough to justify a reversal of the sentencing court's decision when she was absolutely within her discretion to impose a sentence within the correctly calculated guideline range. And I'd also like to note that in Chavez-Suarez, while the court looked to the Ninth Circuit case of Amezcua-Vasquez, this court found that a downward variance may be warranted. So it's not necessarily warranted based on both, one, the age of the offense, the underlying drug offense, but two, the relatively quote-unquote benign nature of an offense compared to other offenses triggering the enhancement. And the defendant has not shown that his underlying methamphetamine distribution offense was benign in any way. The defendant also hasn't presented mitigation rebutting the presumption of the reasonableness of a guideline sentence in this case. So unless your honors have any questions, the government submits that the defendant has not rebutted the presumption of his low-end guideline range sentence. And the sentencing judge was within her discretion to decline the defendant's request for a variance and instead impose the low-end guideline sentence in this case. Thank you, counsel. Thank you, your honors. Mr. Poisson, I think you have a few seconds. Yes, your honor. Regarding Chavez-Suarez, as was indicated, the Tenth Circuit in that case said that there may be situations where a variance is appropriate given a stale prior conviction, and I think this case is that case. The conviction is stale, it's 20 years of age, and when you look at each of the 3553 factors, there is nothing egregious to count against him as far as what I've already discussed. So I think in balancing that... Thank you. Thank you. Thank you. I'm sorry. Okay. Thank you, counsel. The case is submitted. Counsel are excused.